## Deloach vs. Brownfield, et al.

Under the 4 Sec. of the Act of 11th January, 1851, a levee contractor, to be entitled to pre-emption of the lands reclaim˜˜, must be the owner of the fr˜n˜ lands leveed, and the lands claimed under the pre emption privilege must lie in the rear of such front lands.

The land agents had no power to sell or receive applications for the purchase of swamp lands, until the districts were laid off and the maps, etc., received. (16 *Ark.* 59 ; 2*) Ib.* 354.)

At the period when the authority of the land agent in any district to act was perfected, the power of the commissioners to sell lands within such district wholly ceased·

The powers of the swamp land commissioners being derived from and limited by legislative enactment, it was not in the power of the board to enlarge them by resolution.

*Appeal from Jefferson Circuit Court in Chancery.*

Hon. John C. Murray Circuit Judge.

Bell & Carlton for the appellant.

The true object of the act of 20th January, 1853, was to enable any one who had paid for, and received a certificate for swamp lands to have his title perfected to the same.

If the certificate of Carroll was illegally issued, the defect was cured by the ratification of the act by the board of swamp land commissioners: or if not, any defect in the certificate was cured by the act of 20th January, 1855, enabling the Governor to make deeds to swamp and overflowed lands.

Watkins & Gallagher, contra.

The powers of the board of swamp land commissioners, so far as the sale of lands in Carroll's district was concerned, ceased when he received the plats. 16 *Ark.* 62.

The board having no power to appoint an agent to make

sales, could not by ratification of the act of such agent, make it valid.

No disposition or sale of lands by agents of the State, except made in strict conformity with the provisions of law, pass any title. 16 *Ark.* 428; *Ib.* 461.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This case involves conflicting entries of swamp lands. The bill was filed by Deloach to establish the validity of the entry of Frazier, under whom he claims by assignment, and to cancel the entry of Brownfield and Watkins.

On the 7th of September, 1853, Frazier applied to David W. Carroll, as land agent for the Pine Bluff district, to purchase the lands in controversy, and others, with scrip issued to him for levee work, and obtained the certificate of Carroll that he had so applied.

On the 25th of December, 1853, he obtained a certificate from W. C. Butts, secretary of the board of swamp land commissioners, stating that he had, on that day, purchased and paid for the lands. Under these certificates, Deloach, the complainant in the bill, claims title to the lands, by assignment from Frazier.

On the 13th of June, 1855, Brownfield and Watkins purchased the lands of I. C. Mills, land agent of the Pine Bluff district, and obtained a certificate of purchase. The land agent had offered the lands at public sale on the 31st of January, 1854, and they were not sold for want of bidders.

On the 26th of September, 1856, Brownfield and Watkins surrendered their certificate of entry to Mills, the land agent, and obtained a patent certificate in lieu thereof, under the provisions of the act of 20th January, 1855.

On the 13th Nov. 1856, they obtained the certificate of the auditor, that the lands had been patented to the State under the swamp land grant, and on the same day, the governor issued to them a patent therefor.

Upon these facts, and some others disclosed by the pleadings

and evidence in the cause, which will be noticed below, the court refused the relief prayed by the complainant, and dismissed his bill for want of equity, and he appealed·

1. It is insisted in the bill that Frazier had a pre-emption right to the lands from the date of his levee contract.

Under the 4th and 5th sections of the act of 6th January, 1851, to provide for the reclaiming of the swamp lands, a levee contractor had his election to take his pay for work done by him, in the lands reclaimed, or in scrip, which he might transfer by assignment, or which he could locate upon any of the unselected swamp lands. *McGehee vs. Mathis as sheriff etc.*, 21 *Ark.* 88.

The 4th section of the act of 11th January, 1851, provides that any person owning lands on the bank of any river in any swamp and overflowed land district, shall have the preference of taking the contract to levy such lands, at the lowest bid, and that each person so contracting shall have the preference to take in pay for executing his contract, any swamp or overflowed lands lying in the rear, adjacent to his own lands.

The answer denies that Frazier was the owner of the front lands, or that the lands in controversy were in the rear of the levee made by him; and there was no proof to overturn the denial.

Moreover, by the terms of Frazier's levee contract (bearing date 3d November, 1852,) he was to be paid for his work in land or scrip; and the bill alleges that he took scrip; with which he applied to Carroll to enter the lands in controversy. It follows that the claim to a pre-emption is not clearly made out.

2. It was agreed upon the hearing that Carroll did not receive from the auditor the maps and plats of the lands in the Pine Bluff district, under the act of 12th January, 1853, until the 12th day of October, 1853. He was not in office as land agent, and had no power to sell lands, or to receive applications for the purchase of lands, until his district was laid off by the commissioners, and the maps and plats of lands embraced there-

by furnished him by the auditor. *Hempstead vs. The Auditor* 16 *Ark.* 57. *Same vs. Underhill's heirs* 20 *Ark.* 354.

It follows that the certificate issued to Frazier, by Carroll, on the 7th of September, 1853, stating that he had applied to purchase the lands in controversy with scrip, etc., was granted without any legal authority whatever, and was of no validity. It was as worthless as if it had been issued by any other person than Carroll.

3. On the 12th of October, 1853, the authority of Carroll, as land agent, to receive applications for the purchase of swamp lands, and to sell such lands, commenced; and on the same day the power of the commissioners to sell lands within the Pine Bluff· district ceased. From thenceforward they had no legal authority whatever to sell any lands embraced in Carroll's district. See *Hempstead vs. Auditor and Hempstead vs. Underhill's heirs, ub. sup.*

The alleged sale made by them to Frazier, of the lands in question, on the 25th December, 1853, and the certificate issued to him by the secretary of the board of commissioners, reciting a purchase of the lands by him, on that day, were, therefore, null and void.

If it be assumed to be true, as insisted for the appellant, that Frazier in fact purchased the lands from Carroll, on the 7th of September, 1853, and obtained a certificate of purchase, instead of the certificate that he had *applied to purchase* the lands, which is exhibited with the bill; and that he applied to the commissioners, on the 25th day of December, 1853, to ratify and confirm the sale so made by Carroll, and that they did undertake to ratify the sale, and in pursuance thereof, directed their secretary to issue to Frazier the certificate of purchase exhibited with the bill, this does not help the applicant's title to the lands; because if the commissioners had, at that time, no power to sell the lands themselves, they certainly had no power to confirm a void sale thereof made by Carroll.

4. But it is moreover insisted for the appellant, that Frazier's purchase of the lands was ratified and confirmed by the eleventh

section of a series of resolutions passed by the board of swamp land commissioners on the 6th of October, 1853, when they had the power to sell the lands, defining what they conceived to be their powers, duties etc., etc., which section is as follows :

"11th. And in order to prevent injustice and save private rights, and to secure, as far as they may, persons who have heretofore made application to said land agents to purchase such lands, this board will, whenever furnished with competent evidence that any person has *purchased any* of such lands from any of said land agents, *and paid them therefor*, in scrip or otherwise (regarding the certificates of said agents or copies of their list of sales certified by them, as sufficient evidence,) and whenever the party who produces the evidence that the scrip or funds paid by him *are* in the hands of the auditor or treasurer as paid by him, consider such purchase and payment as an application to purchase the same lands and payment therefor made to them, as *of the day when such proof is furnished*, reserving all rights vested in or accrued to any other person or persons in the meantime; and will give certificates accordingly ; and to that end, will receive and consider as applications made to them, on the day when received, lists from said land agents of all such land heretofore, but not hereafter, purchased of them; so that in any event and whatever may be ultimately decided by the courts in regard to the questions involved, the rights of innocent purchasers will be protected, and ruinous litigation avoided."

It may be remarked that this resolution had not, of itself, the effect to cure and make valid any void sale of lands made or attempted to be made by the land agents; nor is it to be inferred from the language of the resolution that the commissioners intended it to have such effect. They had power at the time the resolution was passed, to sell the swamp lands in the Pine Bluff district in the mode prescribed by law, as officers of the State, but they had no legislative power, and could not by mere resolution, if they had attempted it, confirm, and make valid, sales made by other persons without authority of law, nor could

they by such resolution, extend their own power to make sales, beyond the time when the land agent became invested with power to sell the lands.   The resolution must be regarded as a mere declaration of the course of action which the commissioners had determined to pursue, in relation to illegal sales made by the land agent, while they themselves continued to have power to sell the same lands.

But the appellant failed to show that Frazier had purchased the lands from Carroll, and paid him for them, and that the scrip etc., paid for the lands had gone into the hands of the auditor or treasurer.   On the contrary, he merely proved by the certificate of Carroll that Frazier had made *application* to purchase the lands with scrip, etc., hence it was not shown that Frazier belonged to the class of persons intended to be benefited by the resolution of the commissioners.   Nor was there any allegation or proof that Frazier furnished the commissioners with any evidence that he had purchased the lands of Carroll and paid for them (if he had done so) whilst they had power to sell the lands or ratify the sale made by Carroll, or that he made any application to the commissioners to purchase the lands of them, or to confirm his purchase of Carroll, whilst their power of sale or ratification continued.

3.  It is finally insisted for the appellant, that his title was cured and confirmed by the 1st section of the act of 20th January, 1855, which required all persons holding certificates of entry issued by the swamp land commissioners etc., to surrender such certificates to the land agent of the proper district, and obtain patent certificates etc., in lieu thereof.

It may be remarked in relation to this act, that it does not, in any of its provisions, purport to be a curing statute—that is, to make sales valid which were illegal and void.

Nor is it shown that Frazier ever complied, or ever offered to comply with the requirement of the act, by surrendering, or offering to surrender, to the land agent of the proper district, the certificate obtained by him of the secretary of the board of

commissioners, for the lands in question, and asking a patent certificate in lieu thereof.

If he had done so, and procured the patent certificate, it is probable that the land agent would not afterwards have sold the lands, as he did, to the appellees.

After the certificate of the 25th December, 1853, was issued to Frazier, by the secretary of the swamp land commissioners, and after the land agent of the Pine Bluff district was legally authorized to sell the lands, he advertised them and offered them at public sale, as required by law, and they were not sold for want of bidders. After that, and on the 13th of June, 1855, the appellees purchased the lands of the land agent, as above shown—during all which time Frazier appears to have contented himself with his void entry, and to have made no attempt to make another and a valid purchase of the land agent; nor was it shown that the appellees had any knowledge of his attempted purchase of the lands, at the time they entered them.

The appellant having failed to show that there is any superior equity in his claim to the lands, and it appearing that the appellees have the paramount legal title, the court below properly dismissed the bill for want of equity, and the decree must be affirmed.